### In re JOHNSON et al.

#### (Circuit Court, S. D. New York. June 27, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—HERRINGS IN CANS—BLOATER PASTE.

Various kinds of herring, packed in hermetically sealed tin cans, and known by the names of "Digby chicks," "preserved bloaters," "divided herring," "kippered herring," "fresh herring," "deviled herring," and "herring in tomato sauce," are dutiable under Schedule G, par. 295, of the tariff act of October 1, 1890, as "fish in cans or packages made of tin," at 30 per cent. ad valorem, and not as "fish, smoked, dried, salted, pickled, frozen, packed in ice, or otherwise prepared for preservation," at three-fourths of one cent per pound, under paragraph 293 of said schedule and tariff act, or as "herrings, pickled or salted," at one-half of one cent per pound, or as "herrings, fresh," at one-fourth of one cent per pound, under paragraph 294 of the same schedule and act. "Bloater paste," being a kind of herring ground into paste, and mixed with condiments and spices for use as a sauce, and also packed in small tin cans, is dutiable, under said paragraph 295, as "fish in cans or packages made of tin," at 30 per cent. ad valorem, and not as a "sauce," under paragraph 287 of said schedule and act, at 45 per cent. ad valorem.

## At Law.

Appeal by the importers from a decision of the board of United States general appraisers affirming the decision of the collector of the port of New York in the classification for duty of various kinds of herring packed in hermetically sealed tin boxes, and known by the names of "Digby chicks," "preserved bloaters," "divided herring," "kippered herring," "fresh herring," "deviled herring," and "herring in tomato sauce," which were assessed for duty at 30 per cent. ad valorem, under the provision for "fish * * * in tins," of paragraph 295 of Schedule G of the tariff act of October 1, 1890, which is as follows: "295. Fish in cans or packages made of tin or other material, except anchovies and sardines and fish packed in any other manner, not specially enumerated or provided for in this act, thirty per centum ad valorem." Also from the decision of the said collector and the said board in the classification for duty of certain so-called "bloater paste," which was assessed for duty under paragraph 287 of said schedule and act, which is as follows: "287. Vegetables of all kinds, prepared or preserved, including pickles and sauces of all kinds, not specially provided for in this act, forty-five per centum ad valorem." Against these classifications the importers duly protested, claiming that all the herrings, except the bloater paste, were dutiable either under paragraph 293 or paragraph 294 of said tariff act, which are as follows: "293. Fish, smoked, dried, salted, pickled, frozen, packed in ice, or otherwise prepared for preservation, and fresh fish, not specially provided for in this act, three-fourths of one cent per pound." "294. Herrings, pickled or salted, one-half of one cent per pound; herrings, fresh, one-fourth of one cent per pound." The bloater paste either under said paragraphs 293 or 294, or under said paragraph 295.

The importers appealed to the board of United States general appraisers, who took voluminous testimony in the case on behalf both of the importers and the government. From the importers' testimony it appeared that all the different varieties of herrings known by the names above given were prepared in England by different processes. The so-called "fresh herring" were herring taken from the water, were cleaned, gutted, slightly salted sufficient to prevent them from breaking, packed in small tin boxes containing about one pound, and then subjected to a high degree of heat by which the air was forced out of the cans, which were then sealed up, and the merchandise was ready for the market. The "kippered herrings" were prepared in much the same manner, with the addition of a small quantity of pyroligneous acid, and were likewise submitted to heat for the purpose of expelling the air from the tin cans before the same were finally hermetically sealed up. Essentially the

same processes were followed in the preparation of the other herrings, including those "deviled" and those put up with tomato sauce. It was shown that the "bloater paste" was made from a kind of herring which was ground up fine and mixed with condiments and spices to be used in the nature of a sauce, and put up in air-tight tin cans. Numerous affidavits were presented to the board from wholesale grocers in the city of Philadelphia, Pa., tending to show that in the wholesale markets of that city the so-called "fresh herring," put up as above indicated, were known by that name in trade and commerce. It was also shown that all of the herrings in question were sometimes known in trade under the general name of "pickled" or "salted" herring, and that there was no special trade meaning attached to the expression "herrings, pickled or salted." Testimony was produced on behalf of the government to the effect that "pickled herrings" were herrings simply put down in brine, and packed either in barrels, half barrels, or kegs, and sometimes in tin packages, but which articles had never been "processed" by any system of heating or otherwise. In behalf of the government the testimony of several fishermen from Gloucester, Mass., was also produced, showing that commercially "fresh herrings" were herrings taken from the sea, and before any process had been applied to them, whether of salting or otherwise.

After taking this voluminous testimony, the board of appraisers made a decision affirming the decisions of the collector, both as to all the varieties of herrings and as to the bloater paste. The importers thereupon appealed the case into the circuit court, under the provisions of section 15 of the so-called "Administrative Act of June 10, 1890," and, an order for further evidence having been obtained from said court, further testimony was taken before one of the general appraisers as an officer of the court. The evidence was produced of numerous wholesale grocers in the city of New York, from which it appeared that the term "fish in cans" or "canned fish" was a trade term, covering a large class of fish when put up in air-tight cans for the market, including the so-called "fresh herring" involved in this proceeding.

On the trial in the circuit court it was contended on behalf of the government that congress, in paragraph 295 of the tariff act, had made a specific designation of the whole class of fish which were in fact fish packed in cans or tins, and known to the trade under such general designation, whether the fish were elsewhere enumerated in the tariff act or not. It was also contended that the bloater paste was properly dutiable under paragraph 287, which was a re-enactment of paragraphs 284 and 287 of the tariff act of March 3, 1883. (Tariff Ind..) under which paragraph 284 of that act "bloater paste" had been held by the circuit court to be properly dutiable as a sauce in the case of Bogle v. Magone, 40 Fed. Rep. 226.

Edward Mitchell, U. S. Atty., and J. T. Van Rensselaer, Asst. U. S. Atty., for the collector and government.

Curie, Smith & Mackie, (William Wickham Smith, of counsel,) for the importers.

LACOMBE, Circuit Judge. Neither construction of this paragraph 295 is altogether satisfactory. It is extremely obscure, but, upon considering the various interpretations of it which have been suggested, I adhere to the view that it is to be construed as follows: There should be laid a duty of 30 per cent. ad valorem upon (a) fish in cans or packages made of tin or other material, (except anchovies and sardines,) and (b) fish packed in any manner other than such as has been heretofore specially enumerated or provided; the apparent intent being not so much to lay the duty upon fish, but to lay a duty upon the tin can that brought the fish in, and I am persuaded to take that view of the phraseology of the immediately succeeding section, 296. For that reason I shall affirm the decision of the board of appraisers.

So far as the bloater paste is concerned, which the evidence shows to be bloaters ground into a paste, and mixed with spices, I differ from the board of appraisers. It seems not unreasonable to suppose that congress may have intended, by the use of phrase, in paragraph 287, "pickles and sauces of all kinds," to cover this particular article, but, if so, they have conspicuously failed to manifest their intention in the language they have used. The use of the word "including," and the placing of the clause in the paragraph referring to vegetables of all kinds, coupled with the circumstance that it is grouped with other provisions under the subhead of "Farm and Field Products," would make it impossible for this court to hold that it included a fish sauce, without legislating on the subject, which this court does not sit here to do. For that reason I shall reverse the board of appraisers as to the bloater paste, and direct it to be classified under paragraph 295.